The next case on the docket this afternoon is number 519-0256 Schultz v. St. Clair County et al. Arguing for the appellant, Larry Schultz, is Rhonda Fiss. Arguing for the appellee, St. Clair County, is Andrew Horner. Each side will have up to 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. Please remember, no photographs and only the clerk of the court is permitted to record these proceedings today. Counsel for the appellant, you may proceed. Thank you, your honor. May it please the court, opposing counsel, my name is Rhonda Fiss. And I am here on behalf of plaintiff, Larry Schultz, to ask this court to reverse the ruling of the circuit court of St. Clair County on the complaint, dismissal of the complaint, by order dated April 5th, 2019. The complaint at issue in this case recites facts that bring into question whether blanket tort immunity should be applied to basically prevent a plaintiff from recovering in the event that a dispatcher who works for the county fails to perform. His, his duties. And with that, I would like to point out that in this particular case, my client was the husband of a woman named Lorraine Schultz. Who, on October 27th, 2017, had gone in into various quick marks, places within the city of Mascoutah, where alcohol was being sold. Her husband feared that she was drinking and driving, and he sought the assistance of 911, CINCOM, in St. Clair County, and requested on two occasions that CINCOM dispatch police. The first occasion, the police were dispatched to the wrong location. On the second call, while his wife was within SAC's speedy mark in the small community of Mascoutah, my client. What population of Mascoutah, Counsel? It's approximately 3,000 people, I believe, Your Honor. I will represent to you, Your Honor, that there isn't a policeman in Mascoutah that doesn't know where SAC's handy mark is. It's, it's one of two local fueling points and convenience stores in the town. So, my client is, is telling the dispatcher, trying to tell the dispatcher, giving him directions, and the dispatcher literally refuses, repeats over and over, gotta have an address, gotta have an address, gotta have an address. And eventually just clicks off the phone call with my client, says, call him back when he's got an address. In the meantime, his wife, who has been in the convenience store, exits, gets in her car, drives down the road, and is found approximately 30 minutes later, deceased by her vehicle off the road. When this complaint came before the Circuit Court of St. Clair County on defendant's motion to dismiss, several arguments were raised. Two of the arguments involve, and I'd like to dispose of them quickly, two of the arguments involve whether two of the entities that were named as defendants in the lawsuit could actually be named as defendants in the lawsuit. Those two entities were the ETSB, the board that establishes and maintains the emergency services, and also CINCOM, which is an answering point, the dispatching point for the calls. I argued that certainly they could be included as separate defendants from the county, even though they are related to the county, because in the statute that controls the Emergency Telephone System Act, and the immunities that are provided under the act, or not provided under the act, which is 50 ILCS 750-15.1, specifically names these entities as subject to lawsuit in certain circumstances. And if I may, section 15.1 says, in no event shall a public agency, the commission, the state 911 advisory board, the administrator, the department of state police, public safety agency, public safety answering point, emergency telephone system board, or unit of local government, assuming the duties of an emergency telephone system board, or carrier, or its officers, employees, assigns, or agents, be liable for any civil damages or criminal liability that directly or indirectly results from, or is caused by, any act or omission in the development, design, installation, operation, maintenance, performance, or provision of 911 service required by this act. Unless, unless the act or omission constitutes gross negligence, recklessness, or intentional misconduct. It makes literally no sense that the statute that was enacted in January of 2016 by the Illinois legislature would specify all of these separate entities for the purpose of providing them with immunity, unless the omission is gross negligence, recklessness. There is no way they would separately be named unless they were, they were susceptible to liability. And that is my argument as to dismissal of counts two and count three for the CINCOM point, answering point, and the emergency telephone system board. Moving on to the more intricate and, and really more important argument in this case is whether blanket tort immunity should apply to cause a dismissal of my, my plaintiff's case in total. I think there should be a resounding no on this, and I believe that the circuit court's ruling on this was an error and should be reversed for the following reasons. The ruling is based, if you read the order, the ruling is based on cases that were overruled by the Illinois Supreme Court. In its case of Coleman, which was decided in 2016, the full style of the case is Marcus Coleman versus East Joliet Fire Protection District. The Illinois Supreme Court said that it was going to depart from those cases stare decisis that had applied a special duty exception to allow total immunity for police conduct that could be determined to be willful and wanton, but wouldn't matter if it were willful and wanton unless it were a course of conduct involved. That is how those cases had interpreted immunity or lack thereof for police agencies, EMS, various agencies. And in particular, Coleman makes it clear that it is deferring to statutory changes that have occurred within the state of Illinois that have eroded blanket immunity. And there is another case that's significant, actually two more cases, but in particular, one of the cases, which is similar to the case before the court, because it analyzes the effect of the Domestic Violence Act and how it interplays with tort immunity when police do not respond in a manner that winds up providing protection for a victim. In Moore versus Green, decided in 2006, the Supreme Court of Illinois was faced with the decision of whether the Domestic Violence Act and the carving out of immunity by that act would trump the blanket immunity supported police officers and responders in the Tort Immunity Act. And what the Supreme Court decided was that the legislature didn't just write these laws to burden courts with tortured analytics. The legislature wanted the courts to enforce these laws. And what was decided in Moore versus Green is that the limited immunity provided in the Domestic Violence Act should prevail over the blanket tort immunity that required a course of conduct under the old case law. It's very clear that the Supreme Court indicates that it nor the courts in Illinois have the authority to question what the legislature has done by aggregating to a degree the immunities provided by the Tort Immunity Act. The Supreme Court took that tack again when it decided Abruzzo versus City of Park Ridge and in fact went a little further and stated, this case was in 2008, wherein the Supreme Court stated that when a general statutory provision and a more specific one relate to the same subject matter, interpreting the language of the EMS Act as opposed to the Tort Immunity Act, we will presume that the legislature intended the more specific statute to govern. And they cited back to Moore versus Green based on the Domestic Violence Act. The Supreme Court went further to say, we will also presume that the legislature intended the more recent provisions to control. Now, in the case before the court, the most recent provision of legislative enactment occurred in 2016, at which time the Emergency System Telephone Act enacted what would create liability for dispatchers, employees of PSAPs, such as SimCom, who are dispatchers, who by omission, and this is very important to my argument, by omission or conduct, commits the act of gross negligence, recklessness, or intentional misconduct. It is set forth in black and white in Section 15.1 of 750-15.1 of 50 ILCS 750-15.1. And based upon the rulings in Coleman and the prior ruling in Moore versus Green, this language controls the scope of immunity provided to the dispatcher who refused to send aid, to send the police, to intercept a woman who was not in her car driving drunk, who was in a convenience store. And I think the wisdom of the legislature in doing this is apparent, because the dispatcher is the first in the link of protection that a government can provide its citizens. The dispatchers send the police. This is not a case where we're alleging the police did anything wrong. The police didn't have an opportunity to do anything, because the first domino never fell. The first domino never fell because an employee, for whatever reason, chose to make Mr. Schultz jump through hoops that he couldn't jump through fast enough. And the proposition or the argument that the dispatcher made with Mr. Schultz, I need an address, he repeats it over and over, I need an address, I need an address, simply falls flat. And it falls flat because our government has chosen to send police to protect us in various situations, many of them where an address is not available. If you drive your tractor off into your pond within 40 acres, there isn't going to be an address that 911 can be given. If you run your car off into a pond somewhere off on Route 15, you're not going to have an address that you can give. So that was nothing more than a refusal for who knows what reason, but it was a failure under the terms of the act. It was reckless, and it was an omission. So, Counsel, what about the Dismet case? The Dismet case is decided on law that was overruled by Coleman. Dismet approaches those cases and applies governmental tort immunity based on the public duty rule, and the public duty rule is specifically overruled in Coleman. And I will tell you, the Supreme Court in Coleman says, the application of the public duty rule is incompatible with the legislature's grant of limited immunity in cases of willful and wanton misconduct. Accordingly, we hereby abolish the public duty rule and its special duty exception. Therefore, in cases where the legislature has not provided immunity for certain governmental activities, traditional tort principles apply. However, in the Emergency Telephone System Act, the government did provide for immunities for the board, the PSAP, CINCOM, the County of St. Clair, but not under the circumstances that are alleged in Plaintiff's Complaint. An omission by the dispatcher in failing to dispatch police to intercept, address Ms. Schultz before she got into her car. The allegations made in the complaint clearly fall squarely within the definitions for gross negligence, recklessness, intentional misconduct that are set forth in 15.1. And if I may, the allegations specifically say, who reported, who reported that the decedent was under the influence of alcohol and while the dispatcher refused to dispatch police to sack Spedichek in Muscoota, Illinois, after the second 911 call from her husband, Larry Schultz. The allegation that the dispatcher refused is made multiple times and sufficiently subject to proof, of course, but in the pleading stage, sufficiently alleges a reckless disregard for the circumstances, the plight that Mr. Schultz was in trying to prevent not only his wife from being injured, but the general public. I mean, it's inconceivable that a dispatcher could refuse to dispatch police to a known location within a small community when, if he believes that there's a person getting ready to get in her car and drive under the influence of alcohol, who could injure numerous or kill numerous people, wouldn't act on that. And from there, I've got to go to the court's other reason for dismissing the complaint. And that is that it found that the decedent's actions were the sole proximate cause of her injuries and death. Well, that just simply hurdles over the involvement of the dispatcher whatsoever. I mean, the court refused to recognize that there was an opportunity, had the dispatcher been doing his job, for this tragedy not to unfold. And it's a very, very unfortunate incident that occurred here, but you can't ignore the fact that someone working for the county of St. Clair had an opportunity to prevent what happened. And, therefore, to say that her driving while intoxicated, which, by the way, has never been proven, nor has it been alleged, the allegation simply says that her husband reported to 911 he thought she'd been drinking alcohol. Yes, Your Honor. That's the situation where 911, which was enacted to give greater citizen protection, winds up being something that interferes with protection to the extent that if the husband could have made the call directly to the police, they would have known initially where the wife was and could have taken action. That's exactly the situation, Your Honor. That is exactly the situation. And that is my point. It is not a situation at all where a wife gets in her car drunk and drives off the road and dies. It is a situation where the issue is, what did the dispatcher do? Did he do enough? Did he complete his duty? Did he have a duty? Certainly he did. The legislature, as I point out in my brief, the legislature actually created a duty right before this accident occurred. In 2017, just months before this accident occurred, the legislature stated, It is the purpose of this act to establish the number 911 as the primary emergency telephone number for use in this state and to encourage units of local government and combinations of such units to develop and improve emergency communication procedures and facilities in such a manner as to be able to quickly respond to any person calling the telephone number 911 seeking police, fire, medical rescue, and other emergency services. The General Assembly finds and declares that the most critical aspect of the design of any system is the procedure established for handling a telephone request for emergency services. Your time is up. I'm going to ask you to stop and give you an opportunity, of course, in rebuttal. And if Mr. Horner needs a little extra time, I'll entertain that. Thank you. Mr. Horner, you may proceed. Wait a second until we can get your mic on. There you go. Okay, thank you, Justices. May it please the Court, Counsel. Good afternoon. My name is Andrew Horner, and I represent the defendants at police, St. Clair County, St. Clair County SYNCOM 911, and the Emergency Telephone System Board of St. Clair County in this case, which is before this court from the trial court's order granting defendants motion to dismiss and the trial court's subsequent order denying plaintiff's motion to reconsider. As outlined in the complaint, plaintiff alleges that defendants acted recklessly, willfully, and wantonly when it failed and or refused to intercept the plaintiff's wife, who was admittedly driving intoxicated on the night in question after plaintiff reported that his wife was driving intoxicated. As opposing counsel indicated, the plaintiff's wife ultimately drove her vehicle off a highway into a ditch and was killed. There are three points that I will address today, which are the subject of plaintiff's appeal. First, that the trial court properly dismissed counts two and three of plaintiff's complaint against SYNCOM and the Emergency Telephone System Board, which I will refer to as the board, with prejudice because these entities are not separate legal entities with the capacity to be sued. Rather, they are agencies of the county. Second, that the trial court properly dismissed plaintiff's complaint with prejudice because the defendants are immune from civil liability. And as I will discuss in further detail, contrary to plaintiff's position, the Emergency Telephone System Act, or the ETSA, in no way usurps the long-established provisions of the Illinois Local Governmental and Governmental Employees Toward Immunity Act. And third and finally, that the trial court properly dismissed plaintiff's complaint with prejudice because the decedent's conduct was the sole proximate cause of her death. Circling back to the trial court's dismissal of counts two and three against SYNCOM and the board, plaintiff cites to Section 15.1A of the ETSA for the proposition that these entities may be sued in their individual capacities. This section provides that certain entities may not be held liable for civil damages unless their act or omission constitutes gross negligence. However, this language of the ETSA does not afford plaintiff the right to sue these entities in their individual capacities. As plaintiff's counsel just admitted, SYNCOM is a public safety answering point, which the ETSA defines as a set of call takers authorized by a governing body and operating under common management that receive 911 calls and notifications for a defined geographic area and processes those calls and events according to a specified operational policy. As such, SYNCOM is a division of the county. Section 5-1001 of the Illinois County's Code provides that the county is the body, politic, and corporate that may sue and be sued, plead and may be impleaded, defend and be defended against in any court having jurisdiction of the subject matter. Likewise, the ETSA defines the board as a board appointed by the corporate authorities of any county or municipality that provides for the operation of a 911 system. In this case, that corporate authority remains St. Clair County, which again, under the Illinois County's Code, is the body, politic, and corporate that may sue and be sued. In my brief, I cite an Illinois Attorney General opinion where the issue was whether the state's attorney has a duty to provide legal representation to the Emergency Telephone System Board that is established by the county. The Attorney General concluded that the Emergency Telephone System Board is not an autonomous, independent unit of government with the capacity to be sued. Rather, it is an agency of the county. In reaching this decision, the Attorney General turned to Section 15.4 of the ETSA, which governs the establishment of entities like the board and SYNCOM in this case. I have one quote from Section 15.4 of the ETSA, which provides, in relevant part, The corporate authorities of any county or municipality may establish an Emergency Telephone System Board. The corporate authorities shall provide for the manner of the appointment and the number of members of the board, provided that the board shall consist of not fewer than five members. Section 15.4 goes on to state that the powers and duties of the board shall be defined by ordinance of the municipality or county. The powers and duties shall include, but need not be limited to, the following, planning a 911 system. In sum, the county is the denominated unit of government responsible for creating entities such as the board and SYNCOM. Accordingly, these entities are not autonomous, independent units of government with the capacity to be sued because they are agencies of the county. For these reasons, this court should affirm the trial court's dismissal of counts 2 and 3 against SYNCOM and the board. Turning to the trial court's finding that defendants are entitled to immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, plaintiff alleges that the ETSA somehow usurps and overrides the immunities provided under the Tort Immunity Act. The language that plaintiff cites to is contained in Section 15.1 of the ETSA, which provides that a public body is exempt from civil liability from developing or operating an emergency telephone system unless the act or omission constitutes gross negligence, recklessness, or intentional misconduct. Dispositive of this argument is a case that I cite to in my brief and which opposing counsel fails to recognize, and that is a decision from your colleagues in Carol Ann v. The City of Chicago. In Carol Ann, the plaintiff sued the City of Chicago for wrongful death based on the failure to timely dispatch police in response to a 911 call that reported an armed robbery in progress at a convenience store. The court found that the city was immune from civil liability based upon Section 4-102 of the Tort Immunity Act. In reaching its decision, the Carol Ann court rejected the plaintiff's argument that Section 15.1 of the ETSA provides a controlling immunity over the Tort Immunity Act because it is the more specific immunity. The Carol Ann court also… Wasn't, in that case, an issue brought up that the new Section 15.1 that was enacted in 2016 was not applicable? Yes, Your Honor, and that's a distinction without a difference. They changed the language. The ETSA that was in effect prior to 2016 provides immunity for a public body except for willful and wanton conduct, and the ETSA amended after 2016 provides immunity for a public body except for gross negligence and recklessness. However, the same analysis applies. The Carol Ann court also rejected the plaintiff's reliance on our Supreme Court's decision in Coleman, which opposing counsel discussed, and that is where the Supreme Court abolished the public duty rule and reversed and remanded the case after concluding that the underlying purposes of the public duty rule are better served by application of conventional tort principles. And the immunity protection afforded by statutes than by a rule that precludes a finding of duty on the basis of the defendant's status as a public entity. Based on the foregoing, Carol Ann is clearly dispositive of plaintiff's argument as it pertains to the controlling immunities afforded to defendants in this case, as the immunity afforded under the Tort Immunity Act is not supplanted by the immunity provided under the ETSA. It is also important to note that the trial court in this case did not rely on the public duty rule in its dismissal order, and instead consider the relevant statutory immunities as instructed by our Supreme Court in Coleman. Accordingly, the trial court properly applied provisions of the Tort Immunity Act, which afford defendants immunity from civil liability in this case. Turning to the immunity afforded to the defendants under the Tort Immunity Act, there are two provisions that apply. The first is Section 4-102, which provides a relevant part. Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. The second section of the Tort Immunity Act that is applicable to this case is Section 2-201, which provides a relevant part. A public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion, even though abused. On appeal, plaintiff does not engage in any analysis whatsoever of these provisions of the Tort Immunity Act. Rather, plaintiff focuses on the trial court's alternative conclusion that sufficient facts were not alleged to avoid the application of additional immunity afforded to defendants under Section 15.1 of the ETSA. Nevertheless, Sections 4-102 and 2-201 of the Tort Immunity Act provide absolute immunities without qualification to defendants in this case. For these reasons, the trial court properly considered and applied the immunities afforded to defendants under the Tort Immunity Act. Lastly, I will address the trial court's dismissal of plaintiff's complaint with prejudice because the decedent's conduct was the sole proximate cause of her death. Illinois courts have routinely held that where facts are largely undisputed, the issue of proximate cause may become a question of law determined by a motion to dismiss. Here, in this case, plaintiff acknowledges in his complaint that the decedent was driving under the influence of alcohol on the night of her accident. Plaintiff fails to allege any facts reflecting causation on the part of defendants because the decedent's actions were caused by the independent, illegal actions of the decedent herself, which was her driving while intoxicated. For these reasons, the trial court properly dismissed plaintiff's complaint pursuant to Section 2619A9 of the Code of Civil Procedure. If the panel does not have any questions, when accepting the plaintiff's allegations of the complaint as true, for one or more of the foregoing reasons, I respectfully request that this court affirm the trial court's order dismissing plaintiff's complaint with prejudice and also affirm the trial court's order denying plaintiff's motion to reconsider. Thank you. Any other questions, Justices? Nope. Rebuttal. Thank you, Your Honor. First of all, I would like to address the Caroline case. Judge Justice Wharton was correct that Caroline, because of when the incident at issue occurred, Caroline did not apply the language in the new Section 15.1. In the old Section 15, the immunities were, and any abrogation of the immunities was applied for basically administrative type things, such as planning, administration, those types of things. There was none of the language that's contained, and I think it's even mentioned in the opinion, that the new Section 15.1 specifically points to acts or omissions in the performance by all of these entities that are outlined. There is no way to address whether these entities can be sued separately. There is no way that these specific entities, such as the PSAP, which is CINCOM, and the board are not liable if these certain levels of behavior or omission were exhibited, such as gross negligence, recklessness. There would be no reason to include these, to name them in this section, unless they were liable and could be sued. Moving on from that, I'm looking at the court's order, and I heard opposing counsel's argument, but I'm having a hard time reconciling it, because in the court's order, the court found that Illinois law required a course of action to prove willful and wanton conduct. More than mere inaction. The court cited Winfrey. These cases have been overruled by the Supreme Court of this state in Coleman, and the court relied on it in dismissing my plaintiff's complaint, inexplicably. The court further went on to cite a case called Galizinski v. City of Chicago, a 1985 case, which has also been overruled. It applied the special duty rule, which was specifically overruled in the Supreme Court's case of Coleman, again. And so that is the basis wherein the trial court in St. Clair County said defendants were afforded, I'm reading, were afforded absolute immunity under Section 4102 of the Tort Immunity Act. And I do want to comment on that rather lengthy Attorney General opinion recited by opposing counsel. That opinion is designated an informal opinion. It is not to be relied upon for any ruling, any persuasion, or anything else in the state of Illinois. It is specifically listed as an informal opinion. I notice that opposing counsel did not include that citation in his brief, and I will also say that this opinion is old, long before Section 15.1 was enacted. To say that 15.1 could be hurdled by the trial court ignores the function and the authority of the Illinois legislature. There was a purpose to putting 15.1, and its purpose was, and I commend the state for this, to protect the citizens of the state of Illinois, the general public. And it does so by broadening the liability to not only acts, but also omissions, which is what we have in the case before the court today. Had the dispatcher sent Mascouda police officers to the scene, my client's wife might very well be alive. I am not at the stage of summary judgment, although that type of ruling was imposed upon me. My client deserves his day in court based upon this statute, and to interpret this complaint and the statutory provisions that apply any other way will chill the protection of the citizens of the state of Illinois. Because at what point does a dispatcher reach a threshold where total immunity would not allow him to just decide if he's having a bad day? Well, you know, I'm just not going to do my job. So, protect the citizens of the state of Illinois, reverse the ruling dismissing my client's complaint, and allow it to be reinstated for further proceedings. Thank you. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course. This concludes our oral arguments for today. Court will be in recess.